1   Philip Heller, PLC (State Bar No. 113938)
    ph@philipheller.com
2   Jerold Fagelbaum Esq. (State Bar No. 92584)
    office@fhllplaw.com
3   **FAGELBAUM & HELLER LLP**
    2049 Century Park East, Suite 4250
4   Los Angeles, California 90067-3254
    Phone: (310) 286-7666 / Fax: (310) 286-7086
5

6   Attorneys for Wolfgang Puck Worldwide, Inc., Robert Kautz, Jr.,
    Judy Lawrie, Donald Karas, and David Sculley
7

8                **UNITED STATES BANKRUPTCY APPELLATE PANEL**

9                         **OF THE NINTH CIRCUIT**

10

11  In re                                    )   Appeal No.
                                             )
12  FLORICA, INC.,                           )   Case No. 2:06-bk 13630-RN
        Debtor and Debtor-in-Possession      )
13                                           )   Chapter 11
    _____  )
14                                           )   **Adv. Case No. 2:08-ap-01439-RN**
    THE OFFICIAL COMMITTEE OF                )
15  UNSECURED CREDITORS                      )   **DEFENDANTS' MEMORANDUM OF**
                                             )   **POINTS AND AUTHORITIES IN**
16              Plaintiff/Respondent,        )   **SUPPORT OF MOTION FOR LEAVE**
                                             )   **TO FILE APPEAL FROM**
17      v.                                   )   **INTERLOCUTORY ORDER**
                                             )
18  WOLFGANG PUCK, an individual,            )
    WOLFGANG PUCK                            )
19  WORLDWIDE, INC., a Delaware              )
    corporation, ROBERT FREDERICK           )
20  KAUTZ, JR., an individual, JUDY          )
    LAWRIE, an individual, DONALD            )
21  KARAS, an individual, DAVID              )
    SCULLEY, an individual                   )
22                                           )
23              Defendants/Appellants        )
    _____  )
24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES............................................2

I.    PRELIMINARY STATEMENT..................................................................2

II.   RELEVANT BACKGROUND....................................................................3

III.  THE NECESSITY FOR THE FILING OF A MOTION FOR LEAVE TO
      FILE AN APPEAL FROM AN INTERLOCUTORY ORDER OF THE
      BANKRUPTCY COURT ...........................................................................6

IV.   THE STANDARD FOR LEAVE TO FILE AN APPEAL FROM AN
      INTERLOCUTORY ORDER HAS BEEN MET

      A.    The Court's Role as Gatekeeper In Regulating Admission Of Expert
            Testimony .......................................................................................8

      B.    It Is Unlawful For Crowe Horwath As Certified Public Accountants To
            Provide Expert Testimony Services Based On  A Contingency Fee....9

      C.    It Is Unethical And Unlawful For Mr. McConaughy To Provide Expert
            Testimony Pursuant To A Contingency Fee Agreement.....................10

      D     It Is Unethical For Counsel To The Creditors And Unlawful For Mr.
            McConaughy To Provide Expert Testimony Pursuant To A
            Contingency Fee Agreement..............................................................10

      E.    Plaintiffs In Bankruptcy And Civil Courts Alike Are Subject To The
            Same Legal And Ethical Standards And Must Confront The Same
            Economics Realities..........................................................................13

V.    THE BANKRUPTCY COURT ERRED BY ATTEMPTING TO SIDESTEP
      LEGAL AND ETHICAL PROHIBITIONS BY REFUSING TO
      ACKNOWLEDGE THE EXISTENCE OF A CONTINGENCY FEE
      AGREEMENT ...........................................................................................16

      A.    Plaintiff's Expert Was Retained Pursuant To A Contingent Fee
            Agreement.......................................................................................16

      B.    The Court's Attempt To Distinguish The Authority Provided By
            Defendants and Leave The Issue In Dispute For The Jury Was
            Erroneous As A Matter of Law..........................................................19

VI.   CONCLUSION ........................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Carnegie Mellon University v. Hoffman La Roche Inc.*
  55 F. Supp. 2d 1024, 1034 (N.D. Ca. 1999) ................................................ 18

*Cipollone v. Yale Indus. Prod., Inc.,*
  202 F.3d 376, 380 (1st Cir. 2000) ........................................................... 9

*Cosgrove v. Sears Roebuck & Co.*
  1987 Dist. LEXIS 11696 (S.D. N.Y. 1987). .............................................. 19

*Daubert v. Merrill Dow Pharmaceuticals Inc.*
  509 U.S. 529, 589-595, 125 L.Ed 2d 469, 113 S.Ct. 2786 (1993) ............... 9, 18

*Farmer v. Ramsay*
  159 F. Supp. 2d 873, 883 (D. Md. 2001) ............................................. 17, 21

*Gahn v. Columbia Casualty Insurance Company*
  2005 U. S. Dist. LEXIS 42900 (D. Ariz. 11/22/05)................................... 15, 20

*Gediman v. Sears Roebuck & Co.*
  484 F.Supp. 1244 (D. Mass. 1980) .................................................... 17, 21

*In re Granite Broadcasting Corp.*
  369 B.R. 120, 142 (Bankr. S.D.N.Y. 2007 ............................................... 14

*In re Joy Recovery Technology Corporation*
  286 B.R. 54, 69 (Bankr. Ct. N.D. Ill 2002 ............................................... 16

*In re Mushroom Transp. Co. Inc.*
  70 B.R. 416 (Bankr. E.D. Pa. 1987): .................................................... 16

*In re Oneida Ltd.*
  351 B.R. 79, 91-92 (Bankr. S.D.N.Y. 2006 ............................................. 14

*In re That's Entertainment Marketing Group, In*c.,
  168 B.R. 226 (N.D. Ca.1994)......................................................... 11, 19

*Kumho Tire Co. v. Carmichael*
  526 U.S. 137, 141, 147-149, 143 L.Ed 2d 238, 119 S.Ct. 1167 (1999) ............ 9

*Ullman-Bugga Inc. v. Salton/Maxim Housewares, Inc.*
  1996 WL 535083 (N.D. Ill 9/12/96) ........................................................ 9

*United States Trustee v. Price Waterhouse*
  19 F. 3d 138, 142 (3rd Cir. 1994)..................................................... 11, 19

*United States v. Diaz*
  300 F.3d 66, 73 (1st Cir. 2002)........................................................... 8

**STATE CASES**

*City and Court of Denver Colo v. Board of Appraisal Appeals,*
947 P.2d 1373 (Supreme Court, Colo. 1997 ........................................ 15

*Van Kessler v. Baker* (1933) 131 Cal. App. 654, 658 ........................... 11

**FEDERAL STATUES**

*11 U.S.C.*
§ 101(14). ................................................................................. 3

*11 U.S.C.*
§327(a) .................................................................................. 10

*11 U.S.C.*
§ 327(a) .................................................................................. 3

**FEDERAL RULES**

*Fed. R. Bankr. P.* 9017 ........................................................... 8

*Fed. R. Evid*
§ 101 ...................................................................................... 8

*Fed. R. Evid*
§ 702 ...................................................................................... 8

**STATE STATUTES**

*Bus. & Prof. Code*
§ 11319 ................................................................................. 14

*Bus. & Prof. Code*
§11319 .................................................................................. 11

**Other Authorities**

Rules of Professional Conduct of the California Board of Accountancy Regulations,
16 C.C.R. 1 *et. seq.* (2009) ...................................................... 4

The Principles of Appraisal Practice and Code of Ethics of the American Society of
Appraisers (revd 1994) ............................................................. 4

Uniform Standards of Professional Appraisal Practice (2008-2009 Edition) of the
Appraisal Standards Board ........................................................ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Moving parties Wolfgang Puck Worldwide, Inc., Robert Kautz, Jr., Judy Lawrie, Don Karas and David Sculley (collectively "Defendants") submit this Memorandum of Points and Authorities in Support of their Motion For Leave to File an Appeal from an interlocutory order of the Bankruptcy Court. The Order at issue (Ex. G), the denial of Defendants' Motion *in Limine* for An Order Excluding The Testimony of Plaintiff's Expert Daniel L. McConaughy and to Strike His Report, involves a controlling question of law (i.e. whether the payment of Mr. McConaughy's expert witness fees, when dependent upon the Plaintiff prevailing in this case, is a prohibited contingency fee based agreement) as to which there is substantial ground for differences of opinion and an immediate appeal may materially advance the ultimate termination of litigation. Issues on appeal would include the following:

1.    Was Plaintiff's expert retained pursuant to a continent fee agreement (a fee dependent upon the outcome of the case)?;

2.    If contingent, was the fee agreement unlawful under California law and unethical pursuant to professional standards governing accounting firms and valuation appraisors?;

3.    If contingent, unlawful and unethical, is the utility of Plaintiff's expert testimony an issue of credibility to be assessed by the jury, or a predicate issue of reliability to be determined by the court?;

4.    Did the court abuse its discretion in refusing to conduct an evidentiary hearing on the issue of  assets available to the Debtor to pay for its expert?;

17150\001\pld\10286730.DOC

5.      Did the court err by sustaining Plaintiff's objections to the admission of Plaintiff's expert's deposition testimony regarding his fee agreement?; and

6.      Is evidence inadmissible in civil jury trials admissible in bankruptcy jury trials?

Defendants/Appellants seek the reversal of the Bankruptcy Court's Order with instructions for the Bankruptcy Court to enter a new order granting Defendants/Appellants' Motion in *Limine.*

## II.    RELEVANT BACKGROUND

On August 4, 2006, the Debtor (Floricia, Inc.) filed a voluntary petition under Title 11 of the United States Code.  In December, 2006 certified public accountants Grobstein, Horwath & Company LLP ("GHC") applied to the Bankruptcy Court for approval to act as accountants and financial advisors for the Official Committee of Unsecured Creditors ("the Committee"). GHC represented that it was "disinterested" as that term is defined in *11 U.S. C. Sec. 101 (14)* and *11 U.S.C. 327(a)* and that the only source of payment for its fees and costs would be the Estate of the Debtor. GHC further represented it had received no retainer and would petition the courts for fees based upon its customary hourly fees, a schedule of which was attached to its application. On that basis, the employment of GHC was approved.  (Ex. F)

Thereafter, the Committee sought approval from the Bankruptcy Court to file this Adversary Case.  Approval was obtained and on April 29, 2008, the Committee as Plaintiff filed this Adversary Case.  In December, 2008 Crowe Horwath LLP acquired certain assets of GHC and most of its partners.  Crowe too represented to the Court that it was "disinterested" within the meaning of *11 U.S.C. § 101(14).* It also was disclosed that at the conclusion of the administration of the Debtor's Estate, GHC would seek approval of its fees and costs from January 16, 2007 through December 7, 2008 and the Crowe Horwath similarly had not received any retainer

1  from the Creditors' Committee and would seek approval of its fees and costs

2  incurred from December 8, 2008 and continuing thereafter based upon its hourly

3  rates from the Estate. (Ex. F)

4  Mr. McConaughy was a partner in GHC and now is a director of Crowe

5  Horwath.  He also is a member of the American Society of Appraisers which has

6  conferred on him the designation "Accredited Senior Appraiser" (ASA) in Business

7  Valuation. Accordingly, among others, he is subject to the Rules of Professional

8  Conduct of the California Board of Accountancy Regulations, 16 C.C.R. 1 *et. seq.*

9  (2009), The Principles of Appraisal Practice and Code of Ethics of the American

10  Society of Appraisers (revd 1994), and the Uniform Standards of Professional

11  Appraisal Practice (2008-2009 Edition) of the Appraisal Standards Board. (Ex. F)

12  At the second session of his deposition taken on March 18, 2009, Mr.

13  McConaughy testified that his firm is owed for all professional services provided in

14  this matter to the Official Committee of Unsecured Creditors. Invoices authenticated

15  by Mr. McConaughy (Ex. A at 235) totaled in excess of $532,000 (Ex B here, Ex 12

16  to Deposition).  The vast majority of that work was comprised of services related to

17  the preparation of his expert report and potential testimony. (Ex. B at 2)

18

19  Mr. McConaughy also testified that neither he, nor his firm Crowe Horwath

20  (or its predecessor) has been paid for these services and that they look solely to the

21  Estate of the Debtor for payment of their fees.  However, the Debtor currently has no

22  funds in its Estate to pay those fees. (Ex. A at 240-241)  Additionally, no one has

23  guaranteed the payment of Crowe Horwath's fees or otherwise advanced monies to

24  Crowe Horwath to cover any portion of their fees and costs. (Ex. A at 239)  Thus,

25  notwithstanding their reference to their "customary hourly fees" the only way Crowe

26  Horwath and Mr. McConaughy will be paid is if the Debtor recovers in this case and

27  the Court authorizes a payment from the Estate's funds to pay their fees and

28  expenses. (Ex. A at 241-242)  In other words, ***the payment of Mr. McConaughy and***

1 *his firm's fees is contingent upon the Official Committee of Unsecured Creditors*
2 *prevailing in this case.*

3    On May 14, 2009, the Bankruptcy Court denied Defendants' Motion In
4 Limine To Exclude The Testimony Of Plaintiffs Expert Daniel L. McConaughy And
5 To Strike Report. (Ex. G)  Defendants contend that Mr. McConaughy should be
6 excluded from testifying because payment of his fee is contingent upon the
7 successful outome of this Adversary Case filed by Plaintiff, The Official Committee
8 of Unsecured Creditiors, and, as a contingent-fee based expert, Mr. McConaughy's
9 testimony, if permitted, would violate California Law and professional ethical
10 standards applicable to Mr. McConaughy's firm, appraisers such as Mr.
11 McConaughy; and Plainitiff's counsel, who acquiesced in the presentation of a
12 contingent-fee based expert witness.

13    Notwithstanding the authorities provided by Defendants, and the absence of
14 relevant authority offered by Plaintiff, the Court concluded: that even though Mr.
15 McConaughy and his firm have not been paid since their retention over 2 ½ years
16 ago; that they are now owed over $500,000 in fees and that the Debtor's Estate
17 currently does not have sufficient cash assets to pay any of Mr. McConaughy's fees
18 before he testifies at trial, and will never have sufficient assets to him unless Plaintiff
19 prevails in this Adversary Case, the dependency of the payment of Mr.
20 McConaughy's fees upon the outcome of this Adversary Case does not constitute a
21 contingent fee.
22

23    The Court noted in its decision that "the expert's opinions seem crucial to
24 victory or defeat in this case."(Order at 7) (Ex. G)  As a result, the parties' respective
25 preparations for trial in this case before a jury revolve around expert testimony. The
26 deposition of Mr. McConaughy has been taken and, based upon Mr. McConaughy's
27 testimony, Mr. Reiss (Defendants' Expert) is scheduled to be deposed on June 11,
28 2009.  If the Court's Order denying Defendants' Motion is reversed on appeal,

however, Mr. Reiss' testimony will have to be revised to take into account any new expert designated by Plaintiff. To avoid the time and expense of having to prepare and take Mr. Reiss' deposition twice, the deposition should be continued pending the determination of Defendants' appeal.

Similarly, all activity in the Adversary Case should be stayed pending the resolution of the appeal. If not, the parties, will be handicapped in preparing for trial knowing that, if the Court's Order is reversed, much of this preparation, geared towards Mr. McConaughy's testimony, opinions and report, will have to be discarded and done all over again, this time with Plaintiff's new designated expert. Beyond that, if the Adversary Case proceeds to trial while the appeal is pending, the relief sought by way of appeal (excluding the trial testimony of Mr. McConaughy) will be rendered moot, and the appeal subject to dismissal. Accordingly, to protect their rights on appeal. Defendants filed a Motion for a Stay with the Bankruptcy Court, which as of this date, is currently pending.

## III.    THE NECESSITY FOR THE FILING OF A MOTION FOR LEAVE TO FILE AN APPEAL FROM AN INTERLOCUTORY ORDER OF THE BANKRUPTCY COURT

While an appeal of a final order, judgment or decree may be taken as of right, an appeal of an interlocutory may be taken only with the consent of the district court or appellate panel. 28 U.S.C. § 158 (a)(1)[3].

Federal Rule Bankruptcy Procedure 8003(a) provides only that a party seeking leave to appeal must state: "the reasons why an appeal should be granted." To that end, both district courts and bankruptcy appellate panels, in determining whether to

---

[3]    An interlocutory order is one, like here, that does not determine a cause of action, but only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the case on the merits. *See generally*, 19 *Moore's Federal Practice,* Ch. 203 (Mathew Bender 3d ed.)

1   grant leave to appeal from an interlocutory order, previously have relied on the

2   standards set forth in 28 U.S.C. § 1292(b) governing appeals of interlocutory district

3   court orders to the court of appeals (*i.e.* that the interlocutory order involves a

4   controlling question of law as to which there is a substantial ground for difference of

5   opinions, and that an immediate appeal may materially advance the ultimate

6   termination of litigation.) *See, e.g. **Leisure Dev. Inc. v. Burke (In re Burke)*** 95

7   B.R. 716, 717 (B.A.P. 9th Cir. 1989); *See also,* **Betta Products, Inc.** 2007 U.S. Dist.

8   LEXIS 81621*3-*4 (N.D. Ca. 2007).  Pursuant to 28 U.S.C. § 158(d)(2), these

9   standards are not conjunctive, but rather, is met if either standard is met, and either

10  the bankruptcy court or a party to the appeal may make the certification that the

11  standard has been met.

12

13  **IV.    THE STANDARD FOR LEAVE TO FILE AN APPEAL FROM AN
        INTERLOCUTORY ORDER HAS BEEN MET**

14

15          The Bankruptcy Court recognize the importance of the issues raised by

16  Defendants' Motion *in Limine* to Exclude The Trial Testimony of Plaintiff's Expert

17  and To Strike His Report when it acknowledged that: "the experts' opinions seem

18  crucial to victory or defeat in this case."  Order at 7. (Ex. G)  If as Defendants

19  contend, Plaintiff's expert is excluded from testifying at trial, this litigation will be

20  terminated before trial by dispositive motion because Plaintiff will be unable to

21  establish a *prima facie* case.  Accordingly, whether Mr. McConaughy should be

22  allowed to testify is a controlling question of law and immediate appeal of the

23  Court's order denying Defendants' Motion To Exclude will materially advance the

24  ultimate termination of litigation.

25  / / /

26  / / /

27  / / /

28  / / /

1

2

### A.    The Court's Role As Gatekeeper In Regulating Admission Of Expert Testimony

3

4

5

6

7

8

9

10

11

The Federal Rules of Evidence apply in Bankruptcy cases. *Fed. R. Bankr*. P. 9017, *Fed. R. Evid 101*. *Rule 702* of the *Federal Rules of Evidence* governs the admissibility of expert testimony and provides that: a). an expert must be sufficiently qualified to assist the trier of fact; b). the testimony must be relevant to the facts of the case; c). the testimony must be based on sufficient facts and data; and d). the methodology and principles underlying the testimony must be reliable. Expert testimony which is not relevant and reliable is inadmissible. *Fed. R. Evid 702*; *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A trial court performs a "gatekeeping role" in regulating the admission of expert testimony under Rule 702. *Daubert v. Merrill Dow Pharmaceuticals Inc*. 509 U.S. 529, 589-595, 125 L.Ed 2d 469, 113 S.Ct. 2786 (1993) The role applies to all expert testimony, not just "scientific or technical" expert testimony. *Kumho Tire Co. v. Carmichael* 526 U.S. 137, 141, 147-149, 143 L.Ed 2d 238, 119 S.Ct. 1167 (1999)  The objective of the gatekeeping  requirement is to ensure reliability and relevancy and "to make certain that an expert … employs in the courtroom the same level of  intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho*, *supra*, 526 U.S. at 152. The ultimate purpose of the *Daubert* inquiry is to "determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue" *Cipollone v. Yale Indus. Prod., Inc.*, 202 F.3d 376, 380 (1st Cir. 2000). *Daubert* and *Kumho* are directly applicable to valuation testimony. *Ullman-Bugga Inc. v. Salton/Maxim Housewares, Inc.* 1996 WL 535083 (N.D. Ill 9/12/96) ("(W)hile business evaluation may not be one of the traditional "sciences" it is nevertheless a subject area that employs specific methodologies and publishes peer-reviewed journals.") A motion *in limine* was an appropriate, if not preferred, method to present the issue of exclusion of evidence to the court.

**B.    It Is Unlawful For Crowe Horwath As Certified Public Accountants To Provide Expert Testimony Services Based On A Contingency Fee**

GHC and its successor Crowe Horwath were approved by the Bankruptcy Court to provide accounting services and financial advice to the Creditors' Committee. What neither GHC, nor Crowe Horwath, requested was that Mr. McConaughy be approved to provide expert testimony in this case pursuant to a contingent fee. That request was not submitted because ***it would be unlawful under California law*** for a public accounting firm to provide expert testimony pursuant to a contingency fee arrangement:

> (a)  A licensee shall not:
>
> *        *          *
>
> (4) Perform an engagement as a testifying expert for a contingent
>
> fee.
>
> *      *      *
>
> Except as stated in the next paragraph, a contingent fee is a fee established for the performance of any service pursuant to an arrangement in which no fee will be charged unless a specific finding or result is attained, or in which the amount of the fee is otherwise dependent upon the finding or result of such service.

16 C.C.R. 62[4]

Indeed, in California, an agreement to retain an expert to testify at trial pursuant to a contingency fee agreement is unenforceable:

> Here was too great a temptation to practice deceit and to commit the common crime of perjury. The agreement was void as tending to obstruct and impair the administration of justice, and therefore as contrary to public policy

***Van Kessler v. Baker*** (1933) 131 Cal. App. 654, 658.

---

[4]    Pursuant to 16 C.C.R. 51 "…all firms shall certify that any non-licensee owner… has been informed regarding the rules of professional conduct applicable to accountancy firms."

1    Moreover, if Crowe Horwath were to provide expert witness testimony based
2 upon a contingent fee agreement, it would no longer be "disinterested." When an
3 accounting firm ceases to be disinterested, it cannot be employed pursuant to *11
4 U.S.C.* §327(a). *Compare,* **United States Trustee v. Price Waterhouse** 19 F. 3d 138,
5 142 (3rd Cir. 1994) (accounting firm which was owed pre-petition fees by the debtor
6 was not disinterested and could not be employed by the debtor in Bankruptcy).

7    Finally, as a consultant to the Creditors' Committee, Crowe Howarth has
8 undertaken an advocacy role in this matter, aligned with, and vested in, the interests
9 of the Creditors' Committee (ostensibly on behalf of the Debtor). Having taken such
10 a partisan role, as shall be seen below, it cannot proffer one of its own as an
11 independent appraiser on the issue of business valuation. *See* **In re That's**
12 **Entertainment Marketing Group, In**c., 168 B.R. 226 (N.D. Ca.1994) noting the
13 differences between retaining an accounting firm as a "professional person" under *§*
14 *327* ("a term of art reserved for those persons who play an intimate role in the
15 reorganization of a debtor's estate") and "an accountant who is retained solely to
16 testify as an expert witness in collateral litigation[and] does not assume a 'central
17 role in the administration of the bankruptcy'.)
18

19    **C.    It Is Unethical And Unlawful For Mr. McConaughy To Provide
20          Expert Testimony Pursuant To A Contingency Fee Agreement**

21    As a director of Crowe Howarth, Mr. McConaughy's potential expert
22 testimony would be unlawful under California law. *16 C.C.R. 51* and *62*. In addition,
23 as a licensed appraiser, Mr. McConaughy's expert testimony would be unlawful and
24 unethical.

25    It is a violation of California law to provide services as an appraiser, without
26 complying with the Uniform Standards of Professional Appraisal Practice:
27

28

1
2
3
4

Notwithstanding any other provision of this code, the Uniform Standards of Professional Appraisal Practice constitute the minimum standard of conduct and performance for a licensee in any work or service performed that is addressed by those standards.

5

*Bus. & Prof. Code §11319*

6
7

To that end, the Uniform Standards of Professional Appraisal Practice provides:

8

**Management (ETHICS RULE):**

9

\*        \*        \*

10
11

It is unethical for an appraiser to accept an assignment, or to have a compensation arrangement for an assignment, that is contingent on any of the following:

12

\*        \*        \*

13
14

5.  the occurrence of a subsequent event directly related to the appraiser's opinion and specific to the assignment's purpose.

15
16
17

**Standards Rule 10-3:**

Each written appraisal report for an interest in a business enterprise or intangible asset must contain a signed certification that is similar in content to the following form:

18
19

I certify that, to the best of my knowledge and belief:

\*        \*        \*

20
21
22

I have no [or the specified] present or prospective interest in the property that is the subject of his report, and I have no [or the specified] personal interest with respect to the parties involved.

\*        \*        \*

23
24
25
26
27

My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

28

1

2

My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. (Ex. D) [5]

3

4

5

6

Moreover, as a member of the American Society of Appraisers, Mr. McConaughy is subject to the American Society of Appraisers' Principles of Appraisal Practice and Code of Ethics which states:

7

7.1    Contingent Fees

8

9

10

11

12

13

14

15

16

17

18

If an appraiser were to accept an engagement for which the amount of his compensation is contingent upon the amount of an award in a property settlement or a court action where his services are employed; or is contingent upon the amount of a tax reduction obtained by a client where his services are used; or is contingent upon the consummation of the sale or financing of a property in connection with which his services are utilized or is contingent upon his reaching any finding or conclusion specified by his client; then, anyone considering using the results of the appraiser's undertaking  might well suspect that these results were biased and self-serving and therefore, invalid. Such suspicion would militate against the establishment and maintenance of trust and confidence in the results of appraisal work, generally; ***therefore the Society declares that the contracting for or acceptance of any such contingent fee is unethical and unprofessional***. (Emphasis added)[6] (Ex. E)

19

/ / /

20

/ / /

21

/ / /

22

/ / /

23

24

[5] In a telling gesture, Mr. McConaughy did not certify his expert report.  (Ex. C at 27)

25

26

27

[6] In a non-jury context, Bankruptcy courts are entitled to discredit, and have discredited, anything said by an expert compensated on that basis.  *See e.g.* ***In re Granite Broadcasting Corp.*** 369 B.R. 120, 142 (Bankr. S.D.N.Y. 2007); ***In re Oneida Ltd.*** 351 B.R. 79, 91-92 (Bankr. S.D.N.Y. 2006). Of course, here the problem is more egregious since the trier of fact is a jury.

28

**D.    It Is Unethical For Counsel To The Creditors'Committee
ToAcquiesce In The Payment Of A Contingency Fee To A Witness**

Counsel for the Creditors' Committee, Ezra Brutzkus Gubner LLP submitted the GHC Application for Employment to the Bankruptcy Court. Under California Rules of Professional Conduct, it is unethical for an attorney to acquiesce in the payment of a contingent fee to a witness:

**Rule 5-310.    Prohibited Contact With Witness**

A member shall not:

\*        \*        \*

(B) Directly or indirectly pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case.

Cal. Rules of Professional Conduct,
Rule 5-310(B)

**E.    Plaintiffs In Bankruptcy And Civil Courts Alike Are  Subject To
The Same Legal And Ethical Standards And Must Confront The
Same Economic Realities**

In *City and Court of Denver Colo v. Board of Appraisal Appeals,* 947 P.2d 1373 (Supreme Court, Colo. 1997) the court found that USPAP prohibits the use, as unethical, of contingency fee agreements for appraisers who were providing expert testimony. In that case, compliance with USPAP was mandated by the Federal Institution's Reform and Recovery Act of 1989, *12 U.S.C. 3331 to 3351 (1994)* and application of USPAP was incorporated into Colorado law. (Sec. 12-61-712(1)(b)). Accordingly, the court reversed, vacated and remanded a decision of the Colorado Board of Appraisal Appeals in favor of the taxpayer on the ground that allowing expert appraisal testimony was unlawful when the expert had been retained on a contingency fee basis. (USPAP is similarly incorporated into California law. *See*

1  *Bus. & Prof. Code* § 11319.) *See also,* **Gahn v. Columbia Casualty Insurance**

2  **Company** 2005 U. S. Dist. LEXIS 42900 (D. Ariz. 11/22/05) where the court

3  rejected the expert appraiser's affidavit of impartiality and disinterest finding that,

4  although professing to be hired on an hourly basis, if hired in July 2003, some 14

5  months had passed without payment. The Court, after noting USPAP standards,

6  concluded it had doubts over the expert's neutrality and granted defendant's motion

7  to disqualify the appraiser.

8      What was true in civil courts also is true in Bankruptcy Courts. Experts will

9  be excluded if party to contingency fee agreement. *See e.g.* **In re Mushroom**

10  **Transp. Co. Inc**. 70 B.R. 416 (Bankr. E.D. Pa. 1987):

12          In Pennsylvania, the leading appellate decision has expressed the
           traditional view that contingent witness fess inevitably tend to bias
13          the witness and encourage perjury. *Belfonte v. Miller*, 212 Pa.
14          Super. 508, 243, A.2d 150 (1968) Belfonte involved an action by
           the expert witness against the party for whom he testified to
15          enforce his contingent fee arrangement.   Based upon policy
           concerns, the Superior Court held the fee agreement invalid and
16          refused to enforce the contract.   However, the court's reasoning
17          persuades me that if the state court were aware of the contingent
           fee agreement prior to the witness' testimony the court would bar
18          the testimony.
19
20                          *          *          *
21          My reading of Belfonte and the Code of Professional
           Responsibility leads me to conclude that ***the contingent fee***
22          ***agreement renders Deric [the expert witness] incompetent to***
           ***testify at trial at this time*** (Emphasis added.)
23

24                                          *Id*. at 418[7]

25  _____
    [7]   Nevertheless, there are cases which have held that when the debtor runs out of
    money to pay an expert the Bankruptcy Court will not preclude an expert's
26  testimony even if the expert was paid pursuant to a contingency agreement. Instead,
    the contingency arrangement would be a factor in assessing credibility. *See,* ***In re***
27  ***Joy Recovery Technology Corporation*** 286 B.R. 54, 69 (Bankr. Ct. N.D. Ill 2002).
    However, ***Joy Recovery*** was not tried before a jury and never addressed the illegality
28  of the testimony, only the ethical violation.

1      Other courts have held that a contingency fee relationship, without more, is

2  sufficient to disqualify an expert witness on legal grounds notwithstanding the lack

3  of funds otherwise available to pay for his services:

4

5      The Defendants have filed a motion to strike Dr. Lerner's report
because Farmer hired Lerner on a contingency basis. ***When***

6      ***questioned about this at oral argument. Farmer's counsel***

7      ***explained that his client lacked the funds necessary to pay an***
***expert in advance. This explanation is unsatisfactory. Under the***

8      ***common law in most jurisdictions, including Maryland, 'it is***

9      ***improper to pay an expert witness a contingent fee.' Md. Rules***
***16-812, Rules of Professional Conduct 3.4 cmt. (2000)***. As Chief

10     Judge Motz of this Court observed, 'Witness contingency fee

11     agreements affirmatively violate the fundamental policy of
Maryland and the United States.' Accrued Financial Services, Inc.

12     v. Prime Retail, Inc., 2000 WL 976800 at *3n. 3 (D. Md. June 19,

13     2000) *See*, Cosgrove v. Sears Roebuck and Co. 1987 U.S. Dist.
LEXIS  11696,  987  WL33595  (S.D.N.Y.  Dec.  21,  1987).

14     (Footnotes omitted) (Emphasis added.)

15  ***Farmer v. Ramsay*** 159 F. Supp. 2d 873, 883 (D. Md. 2001) *See also,* ***Gediman v.***

16  ***Sears Roebuck & Co***.  484 F.Supp. 1244 (D. Mass. 1980) where the court focused

17  on how the very purpose of expert testimony, *i.e.* to aid the trier of fact, is

18  fundamentally undermined by financially self-interested expert testimony:

19

20     ***The assistance a jury is to receive from expert opinion should not***
***be tempered by the need to speculate how much of a discount to***

21     ***allow for personal interest***. The very fact that a jury needs expert

22     testimony means it lacks qualifications to make such a judgment.
An  agreement  to  give  an  opinion  on  a  contingent  basis,

23     particularly on an arithmetical scale, attacks the very core of

24     expert testimony.

                       *      *      *

25     ***It is not a question of ethics that concerns me, but testimonial***

26     ***worth***. With many witnesses, and, of course, parties, interest is

27     unavoidable. An expert, however, whose only relevance is his

28

1   expertise, should not have that expertise flawed. (Emphasis
2   added.)

3                                    *Id.* at 1248

4   Contingent fee compensation to an expert is a factor to be considered by the
5   court in evaluating *opinion reliability* under a **Daubert** analysis. *See,* **Carnegie**
6   **Mellon University v. Hoffman La Roche Inc.** 55 F. Supp. 2d 1024, 1034 (N.D. Ca.
7   1999) (contingency fee compensation along with other factors led to exclusion of
8   expert witness testimony).
9

10  **V.    THE BANKRUPTCY COURT ERRED BY ATTEMPTING TO**
11  **       SIDESTEP LEGAL AND EITHICAL PROHIBITIONS BY**
12  **       REFUSING TO ACKNOWLEDGE THE EXISTENCE OF A**
           **CONTINGENCY FEE AGREEMENT**
13

14       **A.    Plaintiff's Expert Was Retained Pursuant To A Contingent Fee**
                 **Agreement.**
15

16
17       Plaintiff argued that there are "contingencies" and then there are
18  "contingencies". Without citing any authority, Plaintiff contended that the only type
19  of expert contingency proscribed by the law is one "tethered solely to a percentage
20  of any result." (Plt.'s Opp. at 5:22-23).
21       However, an expert's trial testimony also will be excluded where the
22  contingent fee is not a percentage interest in the recovery, but rather, like here,
23  contingent on the plaintiff succeeding in the action. *See* **Cosgrove v. Sears Roebuck**
24  **& Co.** 1987 Dist. LEXIS 11696 (S.D. N.Y. 1987). Such a contingency arrangement
25  is prohibited because the expert's independence and objectivity become impaired
26  when payment hinges on the success of the litigation.
27       There is a fundamental difference between retaining an accounting firm as a
28  "professional person" under §327("a term of art reserved for those persons who play

1   an intimate role in the reorganization of the debtor's estate") and "an accountant

2   who is retained solely to testify as an expert witness in collateral litigation [and]

3   does not assume a 'central role in the administration of the bankruptcy' "). *In re*

4   *That's Entertainment Marketing Group, Inc.*, *supra*, 168 B.R. 226.   If Crowe

5   Howarth were to provide expert testimony based upon a contingent fee agreement, it

6   would no longer be "disinterested" and cannot be employed pursuant to 11 USC

7   §327(a). *Cf.* *United States Trustee v. Price Waterhouse*, *supra*, 19 F. 3d at 142

8   (accounting firm owed pre petition fees by the debtor not disinterested and could not

9   be employed by the debtor in Bankruptcy).

10   Plaintiff's counsel's argument that GHC and Crowe Howarth's application

11   made reference to being paid on an hourly basis to be approved by the Court is, at

12   best, misleading.   The assets necessary to fund such an hourly fee are solely

13   dependent upon Plaintiff prevailing in this case. *Cf.* *Gahn v. Columbia Casualty*

14   *Insurance Company*, *supra*, 2005 U.S. Dist. LEXIS 42900 (where the Court

15   rejected an expert appraiser's affidavit of impartiality and disinterest finding that,

16   although professing to be hired on an hourly basis, some 14 months had passed

17   without payment). Mr. McConaughy testified here that since his firm was retained

18   two and one-half years ago it has not been paid for its services.

19

20   ***There was no dispute that there currently are no liquid assets available to***

21   ***pay Crowe Howarth and Mr. McConaughy's fees***. Instead, Plaintiff argued that it

22   has a claim to "one other ***potential asset*** of the estate, the stock held by the Debtor of

23   WPW." (Emphasis added) (Plt.'s Opp. at 3:16).

24   However, all Plaintiff did was to identify another contingency which had to

25   occur before there are any assets in the Estate to pay for Mr. McConaughy's

26   services.   To that end, Mr. McConaughy would have to give conflicted expert

27   testimony relating to the alleged net value of the WPW stock to the Estate (that is ***if***

28   Plaintiff is successful in proving the Estate, in fact, has a viable claim to any interest

1    in the stock).  Plaintiff did not establish that payment of Mr. McConaughy and

2    Crowe Howarth's fees was anything other than solely dependent upon the outcome

3    of this case and therefore a prohibited contingency-based fee agreement.

4        Plaintiff also failed to come forward with any authority to justify a

5    Bankruptcy Court exemption to the application of California law and ethical

6    principles which preclude contingent fee-based expert valuation testimony. By

7    contrast, Defendants have cited to case authority where other courts have addressed

8    this issue and concluded that a lack of funds to pay for an expert does not justify the

9    use of contingent fees. *See e.g. **Farmer v. Ramsey**, supra,* 159 F.Supp.2d at 883;

10   ***Gediman v. Sears Roebuck* & Co.**, *supra,* 484 F.Supp at 1244; and ***In re***

11   ***Mushroom Transp, Co. Inc.**, supra,* 70 B.R. at 418.

12       Apparently, recognizing the Plaintiff's inadequate showing, the Bankruptcy

13   Court came to its aid.  The Bankruptcy Court, in its tentative ruling, for the first time

14   raised the question whether there were potential assets in the Debtor's Estate

15   available to pay Plaintiff's expert other than from a recovery in this case:

16

17       Between the filing of the Debtor's bankruptcy and the filing of
         GHC's employment application, there were sufficient assets as set forth
18       in Debtor's schedules from which to pay GHC.  After that time, and
         even until today there may be sufficient assets, excluding the causes of
19       action in the subject litigation, from which to pay GHC and its
         successor Crowe Horwath LLP ("Crowe Horwath").  At least there is
20       no evidence to the contrary.
21
                         (Order at 4) (Ex. G)
22
         This contention by the Court directly contradicts the Plaintiff's previous
23
     representation to the Court that:  *"it appears likely that only through such claims*
24
     *litigation [this Adversary Case] is there any significant return to the estate."*
25
     (Emphasis added.) Status Report (Filed by Plaintiff's Counsel, dated 4/8/08, at 3.)
26
     (Ex. H)  Defendants immediately requested a continuance of the hearing on the
27
     Motion *In Limine* and asked for an evidentiary hearing on the issue of assets
28

1  currently in the Estate and potential assets available to the Estate.  The Court

2  refused.

3    Subsequently, despite counsel for the Debtor and the Committee's efforts to

4  prevent Defendants from doing so, the Defendants filed an Offer of Proof with the

5  Court demonstrating that, if an evidentiary hearing had been permitted, Defendants

6  would have established that the Debtor did not have, and will not have, sufficient

7  assets to pay for Plaintiff's expert (and the other professionals hired by the

8  Committee) unless Plaintiff recovers in this Adversary Case. (Ex. I)

9    The Bankruptcy Court's attempt to sidestep the legal authorities provided by

10  Defendants by concluding, as a factual matter, there was no contingency agreement

11  was itself factually flawed, inconsistent with the evidence and not supported by any

12  authority.

13

14    **B.**    **The Court's Attempt To Distinguish The Authority Provided By
      Defendants and Leave The Issue In Dispute For The Jury Was
15    Erroneous As A Matter of Law.**

16

17    The Court held that it never had to reach the legal issues raised by Defendants

18  because, as a matter of fact, there was no contingency agreement.  As stated above,

19  that conclusion was inaccurate and inconsistent with the evidence.

20    Nevertheless, the Court indicated that even if it looked at the legal authorities

21  provided by Defendants, it was apparent there were "divergent" holdings in the

22  cases. (Order at 6) (Ex G)   However, this is not accurate.

23    Unlike all the authority relied upon by the Court, which involved bench trials

24  and one case which did not involve an expert at all, but rather, a non-testifying

25  government informant paid on a contingency basis before trial, the cases assembled

26  by Defendants, civil cases and bankruptcy cases, involved cases tried before a jury.

27  Neither Plaintiff, nor the Court, provided on-point authority to the contrary.

28

17150\001\pld\10286730.DOC                                19

1    The Court also erred in its proposed resolution of the issue by holding it was a

2    jury issue going to the weight afforded to Plaintiff's expert testimony. This too is

3    incorrect. The Court improperly viewed the issue at hand as one of ***credibility*** to be

4    assessed by the ***jury***, rather than ***reliability*** which is a predicate issue to be

5    determined by the ***Court***. ***Carnegie Mellon University v. Hoffman La Roche, Inc.***,

6    *supra*, 55 F. Supp. 2d at 1034

7    ## VI.    CONCLUSION

8    Nothwithstanding the ample authority cited by Defendants, and the absence of

9    any contrary authority provided by the Plaintiff or the Court, the questions raised by

10    the Bankruptcy Court implicate issues of first impression in this Circuit. Immediate

11    appellate review is appropriate in this jury trial case to avoid irreparable injury to

12    Defendants, and avoid the unnecessary cost and burden to the Court and the parties

13    if, as a result of the Court's erroneous ruling, this case would have to be tried twice.

14    Accordingly, Defendant's Motion for Leave to file an Appeal of the Court's

15    interlocutory order should be granted.

16    

17    

18    Dated: May 28, 2009                    Respectfully submitted,

19                                    **FAGELBAUM & HELLER LLP**

20    

21    By: _____

22                                    Jerold Fagelbaum
                                    Attorneys for Defendants/Appellants
23                                    Wolfgang Puck Worldwide, Inc.,
                                    Robert Kautz, Jr., Judy Lawrie, Don
24                                    Karas, and David Sculley

25    

26    

27    

28

1

### CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA (LOS ANGELES)

2

In re Florica.

Case No. 2:06-bk-13630 RN (Adv. Case No. 2:08-ap-01439)

3

4    I hereby certify that on this 28th Day of May, 2009, a true and correct copy of

5  **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN**

6  **SUPPORT OF MOTION FOR LEAVE TO FILE APPEAL FROM**

7  **INTERLOCUTORY ORDER**

8    document was served upon the person(s) listed below via CM/ECF electronic

9    notification.

10

11    Plaintiff's Attorney (Official Committee of
Unsecured Creditors)                         United States Trustee
Office of the United States

12    Steven T. Gubner, Esq.                     Trustee
Richard D. Burstein, Esq.                  725 S. Figueroa Street, 26th Floor

13    Ezra Brutzkus Gubner LLP                  Los Angeles, CA 90071
21650 Oxnard Street, Suite 500

14    Woodland Hills, California 91367
Phone: (818) 827-9000

15    Fax:  (818)827-9099

16    Defendant Wolfgang Puck
c/o David L. Neale, Esq.

17    Michelle S. Grimberg, Esq.
Levene Neale Bender Rankin & Brill LLP

18    10250 Constellation Blvd. Suite 1700
Los Angeles, CA 90067

19

20

21

22
                                          _____
23                                              Carl Kinnison

24

25

26

27

28